Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CORINTHOS INVESTOR GROUP, LLC<br><br>Demandante-Recurrido<br><br>v.<br><br>AMG SECURITIES, LLC Y OTROS<br><br>Demandados-Peticionarios | KLCE202401034 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso núm.: CA2023CV02883 (402)<br><br>Sobre: Cobro de Dinero-Ordinario |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de octubre de 2024.

El Tribunal de Primera Instancia ("TPI") rechazó, de plano, una solicitud de relevo de una sentencia obtenida en rebeldía luego de haberse autorizado que se emplazara por edictos. Según se explica a continuación, concluimos que erró el TPI porque, a la luz de lo alegado en la moción de relevo, era necesario que el TPI recibiera prueba para estar en posición de adjudicar la misma.

I.

En septiembre de 2023, Corinthos Investor Group (el "Demandante") presentó la acción de referencia, sobre cobro de dinero (la "Demanda"), contra AMG Securities, LLC, y el Sr. José Edison Feliciano Torres (el Sr. Feliciano Torres, el "Demandado"; junto con AMG Securities, LLC, los "Demandados").

En la Demanda se alega que los Demandados se obligaron a pagarle al Demandante una "suma líquida de dinero", mas ello no había ocurrido. Se reclamaron $13,000.00, "correspondiente a reembolso por inversión en propiedad". Se alegó que los Demandados se obligaron al pago de honorarios de abogado, pero

no se indicó la cuantía acordada. De todas maneras, se solicitó al TPI que condenase a los Demandados al pago de por lo menos $5,000.00 por dicho concepto. No se suplió detalle adicional sobre la naturaleza de las cuantías reclamadas.

El 15 de septiembre de 2023, sin explicar por qué, el TPI redujo el término para que el Demandante emplazara a los Demandados.

El 14 de noviembre, el Demandante solicitó el emplazamiento por edicto de los Demandados. Se acompañó una declaración jurada de un emplazador, el Sr. Jesús Ruiz Vázquez, en la que este describió las gestiones infructuosas que había llevado a cabo para emplazar a los Demandados, exponiendo lo siguiente:

5. Que el 12 de octubre de 2023, a la 1:00 de la tarde, visité la dirección: Urb. Lomas de Santa Cruz, **Calle Ucar #8, Carolina**, Puerto Rico 00987. Propiedad amplia, color crema, verja de cemento y hierro color marrón y entrada con escalones. Pude notar que tenía un candado como los que se utilizan para los Airbnb. Al momento de la visita no se encontraba nadie en la propiedad. Acto seguido hablé con el vecino de la casa #10, señor de tez blanca, delgado y cabello negro que negó identificarse quien me indicó que esa propiedad **la utilizan para alquiler, pero que no conoce al dueño**. No brindó más información. Luego hablé con el Sr. Cruz, vecino de la propiedad #13 quien me indicó que no conoce el co-demandado José Feliciano Torres y que la propiedad la utilizan para alquiler.

6. Que ese mismo día, a las 2:00 de la tarde, llamé al 787-674-5691 y me contestó el co-demandado José Feliciano Torres quien me indicó que lo llamara mañana ya que en ese momento se encontraba fuera del área metropolitana.

7. Que el 13 de octubre de 2023, a las 12:00 de la tarde, llamé al 787-674-5691 y no contestaron la llamada. Procedí a dejar un mensaje de texto.

8. Que ese mismo día, a las 4:00 de la tarde, llamé al 787-674-5691 y nuevamente no contestaron la llamada.

9. Que el día 17 de octubre de 2023, a las 6:00 de la tarde, visité la dirección adicional brindada ubicada en **Calle Ceiba, #61 Urb. Pedregales, Canóvanas**, PR. Propiedad se ubica en urbanización con entrada mediante control de acceso. Al llegar me atendió el guardia de seguridad García, quien me indicó que **la persona de la residencia no permitió el acceso**.

10. Que ese mismo día, a las 6:30 de la tarde, llamé al 787-674-5691 y no contestaron la llamada.

11. Que el día 20 de octubre de 2023, a las 11:30 de la mañana, llame al 787-674-5691 y no contestaron la llamada.

12. Que, en ese mismo momento, realicé gestión en el Cuartel de la Policía, donde hablé con el Agente Ortiz, Placa 19742, quien me informó no tener información en cuanto a AMC Securities, LCC, José Edison Feliciano Torres o algún familiar.

13. Que, en ese momento, realicé gestión en la Casa Alcaldía de Carolina, donde hablé con la Sra. Dávila, quien me informó no tener información en cuanto a AMC Securities, LCC, José Edison Feliciano Torres o algún familiar.

14. Se aclara que no se realizaron gestiones en el Servicio Postal debido a que sus empleados no están autorizados a ofrecer información.

15. Se realizó búsqueda en las redes cibernéticas en cuanto a AMC Securities, LCC y José Edison Feliciano Torres, de los resultados obtenidos no pudimos obtener información adicional.

El 29 de noviembre, el TPI ordenó la expedición de los emplazamientos por edicto. El 8 de enero, el Demandante informó y acreditó al TPI que el edicto había sido publicado el 7 de diciembre.[1]

Posteriormente, el Demandante presentó una *Moción en Solicitud de Rebeldía*, en la que informó que, luego de expirado el término correspondiente, los Demandados no habían contestado la Demanda.

---

[1] Véase, Entrada Núm. 12 de SUMAC.

El 5 de febrero, el TPI notificó una Sentencia (la "Sentencia"), mediante la cual declaró con lugar la Demanda. La Sentencia no contiene determinaciones de hechos. Aunque hace referencia a "prueba testifical y documental", del récord no surge que se haya presentado prueba alguna. El TPI condenó a los Demandados a satisfacer al Demandante la cuantía reclamada ($13,000.00), más "$5,000.00 por concepto de honorarios de abogado". Aunque el TPI envió por correo la Sentencia a los Demandados, dicha notificación fue devuelta al TPI por el servicio postal por haberla remitido a una dirección insuficiente.[2]

El 7 de junio, los Demandados presentaron una moción sobre *Nulidad de Sentencia, Desestimación, Contestación a Demanda y Reconvención* (la "Moción"). En cuanto a la Demanda, plantearon que el balance reclamado por el Demandante era "incorrecto" y que se habían omitido "maliciosamente las contraprestaciones recibidas". Alegaron que el Demandante había "inflado el precio de la supuesta deuda … para tratar de enriquecerse injustamente …".

En cuanto al emplazamiento, el Demandado aceptó que, el 12 de octubre de 2023, recibió una llamada de un emplazador. No obstante, el Demandado alegó que le solicitó que "lo llamara durante la semana para coordinar y reunirse", pero que el emplazador "nunca se volvió a comunicar" con él. Afirmó que el emplazador "comete perjurio en su declaración jurada al decir que … volvió a llamarlo" y que "le dejó mensajes en su teléfono". También indicó que, aunque el emplazador consignó que había intentado emplazarlo en la Urbanización Los Pedregales, él nunca ha residido allí, pero sí en la urbanización Villas de Cambalache I, la cual está "justo al frente". Aseveró que el Demandante sabe dónde él reside

---

[2] Véase Entradas Núm. 19 y 20.

porque lo "ha visitado ... en la citada urbanización". Por todo lo anterior, arguyó que la Sentencia debía considerarse nula.

El Demandante se opuso a la Moción; planteó que la misma "no presenta ninguna de las instancias contempladas en la Regla 49.2 para conceder el remedio de relevo". Nada consignó sobre lo afirmado por los Demandados en cuanto a la supuesta falsedad de lo declarado por el emplazador ni sobre su supuesto conocimiento de la verdadera dirección residencial del Demandado.

Mediante una Resolución notificada el 9 de julio (la "Resolución"), el TPI denegó de plano la Moción. El TPI razonó que la Sentencia era final y firme, y que la Regla 49.2 de las de Procedimiento Civil, *infra*, "no constituye una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración".

El 19 de julio, los Demandados solicitaron la reconsideración de la Resolución, lo cual fue denegado por el TPI mediante una Resolución notificada el 28 de agosto.

Inconformes, el 25 de septiembre, los Demandados presentaron el recurso de referencia; sostienen que el TPI cometió los siguientes errores:

> 1. Erró y abusó de su discreción el Foro de Instancia en sus Resoluciones recurridas al autorizar la continuación de los procedimientos del caso de epígrafe y al aseverar que no puede aplicarse en este caso la Regla 49.2 de las de Procedimiento Civil, *supra*, aduciendo que dicha regla no existe para reabrir controversias ni sustituir reconsideraciones y apelaciones, cuando la parte recurrente no está reabriendo controversias de este caso ni haciendo uso de dicha regla procesal para sustituir una apelación o reconsideración. La parte recurrente hace uso de la Regla 49.2 de las de Procedimiento Civil, *supra*, para ser relevada de la Sentencia dictada por el Foro de Instancia, el 2 de febrero de 2024, la cual es nula por falta de emplazamiento personal a la parte recurrente, ya que no procedía el emplazamiento por edicto a la parte recurrente. El Foro de Instancia también

desatiende en sus dictámenes aludidos lo relativo a la argumentación de la parte recurrente sobre la inflación de la deuda que le adjudica la parte recurrida y las contraprestaciones que brindó la parte recurrente a la parte recurrida.

2. Erró y abusó de su discreción el Foro de Instancia al no llevar a cabo una vista evidenciaria, pese a que la jurisprudencia ordena que se paute una vista de esa índole cuando se invoca la Regla 49.2 de las de Procedimiento Civil, *supra*, por razones meritorias. La falta de jurisdicción del Foro de Instancia por nulidad se sentencia es una razón meritoria.

3. Erró y abusó de su discreción el Foro de Instancia al emitir su Resolución del 8 de julio de 2024 sin haberle concedido a la parte recurrente la oportunidad de fijar su oposición sobre su moción en cuanto a nulidad de sentencia, colocando así en desventaja y en estado de indefensión a la parte recurrente al verse impedida de defenderse de forma oportuna.

El 27 de septiembre, le ordenamos al Demandante mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la Resolución.

El Demandante compareció en cumplimiento de nuestra orden; arguyó que "el vehículo procesal del relevo solamente está disponible cuando se trata de un error de las partes, no del Tribunal". Resolvemos.

II.

La Regla 49.2 de las de Procedimiento Civil, *supra*, 32 LPRA Ap. V, R. 49.2, dispone que:

> Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:
>
> (1) Error, inadvertencia, sorpresa, o negligencia excusable;
>
> (2) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(3) fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de una parte adversa;

(4) nulidad de la sentencia;

(5) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor, o

(6) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Así pues, la Regla 49.2, *supra*, establece el mecanismo procesal para solicitar al TPI el relevo de los efectos de una sentencia por las razones enumeradas en esta. *García Colón et al. v. Sucn. González*, 178 DPR 527, 539 (2010). Este remedio es discrecional y le corresponde al tribunal determinar si, bajo las circunstancias específicas del caso, existen razones que justifiquen el relevo. *Íd.*, a la pág. 540.

Es nula la sentencia que se dicte sin jurisdicción o sin haberse respetado el debido proceso de ley de una parte. G*arcía Colón et al.*, 178 DPR a la pág. 543. Cuando se trata de una sentencia nula, el TPI está obligado a dejarla sin efecto, independientemente de los méritos que pueda tener la defensa o reclamación del perjudicado. *Íd.*, págs. 543-544.

La mera invocación de la Regla 49.2, *supra*, no necesariamente obliga al TPI a celebrar una vista, cuando de la faz de la moción resulta evidente su carencia de méritos. *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445, 449 (1977). Ahora bien, de ser necesario, al plantearse la supuesta nulidad de una sentencia, el TPI recibirá prueba al respecto. *De Jesús Viñas v. González Lugo*, 170 DPR 499, 513 (2007). En efecto, la celebración de una vista es obligada cuando la parte invoca "razones válidas que requieran la presentación de prueba para sustanciarlas". *Íd.* Es decir, el tribunal

viene obligado a celebrar una vista en aquellas circunstancias en que la parte promovente del relevo necesita presentar prueba para sustanciar lo alegado en la solicitud, a saber, las razones o fundamentos invocados en apoyo al relevo solicitado. *Íd.*

III.

La jurisdicción es la autoridad que tiene el tribunal para atender en los méritos una controversia. *Maldonado v. Junta de Planificación,* 171 DPR 46, 55 (2007). La jurisdicción no se presume y los tribunales no tienen discreción para asumirla donde no la hay. *Íd.*

El emplazamiento es el mecanismo mediante el cual los tribunales adquirimos jurisdicción sobre una persona y, a su vez, esta queda notificada de que existe un procedimiento judicial en su contra. *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 644-645 (2018); *Medina v. Medina,* 161 DPR 806, 818 (2004). De esta forma, la parte demandada tiene la oportunidad de ejercer su derecho a comparecer y a presentar prueba a su favor. *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 30 (2014).

La falta de diligenciamiento del emplazamiento, conforme con lo dispuesto por la Regla 4 de las de Procedimiento Civil, *supra*, ya sea personalmente o por edicto, priva al tribunal de jurisdicción sobre la parte demandada. *Rivera Hernández v. Comtec Comm.*, 171 DPR 695, 714 (2007); *Medina Garay v. Medina Garay*, 161 DPR 806, 818 (2004). De ahí, la necesidad de cumplir estrictamente con todos los requisitos del emplazamiento, pues es así, y solo así, que el tribunal podrá adquirir jurisdicción sobre las partes en el pleito. *Quiñones Román v. CIA ABC*, 152 DPR 367, 374 (2000); *Chase Manhattan Bank v. Polanco Martínez,* 131 DPR 530, 535 (1992). Véase, además, *Medina Garay*, 161 DPR a la pág. 819.

La Regla 4.6 de las de Procedimiento Civil gobierna todo lo relacionado con el emplazamiento por edicto y su publicación. Se

autoriza así al TPI a, en determinadas circunstancias, dictar una orden para disponer que el emplazamiento se haga por un edicto. 32 LPRA Ap. V, R.4.6(a). Se establece que, "[c]uando la persona a ser emplazada" no pueda ser ubicada, se podrá ordenar que el emplazamiento "se haga por un edicto". *Íd.*

Para lograr la referida autorización, deberá comprobarse "mediante declaración jurada" las "diligencias" dirigidas a ubicar a la parte demandada. *Íd.* La declaración debe contener "hechos específicos y no meras conclusiones o generalidades". *Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982, 988 (2020), citando a *Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15, 25 (1993).

La orden de autorización dispondrá "que dentro de los diez (10) días siguientes a la publicación del edicto se le dirija a la parte demandada una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo …, al lugar de su última dirección física o postal conocida". 32 LPRA Ap. V, R.4.6(a). La parte demandante puede ser relevada del requisito de notificación si justifica, mediante declaración jurada a satisfacción del tribunal, que, a pesar de los esfuerzos dirigidos a encontrar una dirección física o postal, ello no fue posible. *Íd.* Véase, además, *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1008-1009 (2021).

Efectuado el emplazamiento, se debe presentar ante el TPI la constancia del diligenciamiento dentro del término establecido. Regla 4.7 de Procedimiento Civil, 32 LPRA Ap. V, R.4.7. Cuando el emplazamiento se hace por edicto, "se probará su publicación mediante la declaración jurada del (de la) administrador(a) o agente autorizado(a) del periódico, acompañada de un ejemplar del edicto publicado y de un escrito del abogado o abogada que certifique que se depositó en el correo una copia del emplazamiento y de la demanda". *Íd.* También se debe presentar "el acuse de recibo de la

parte demandada." *Íd.* Sin embargo, "[l]a omisión de presentar prueba del diligenciamiento no surtirá efectos en cuanto a su validez." *Íd.*

IV.

De conformidad con las normas reseñadas, concluimos que el TPI erró al denegar de plano la Moción, es decir, sin celebrar una vista para dilucidar la veracidad de lo aseverado en la misma en cuanto a la alegada falsedad de lo declarado por el emplazador y en cuanto al supuesto conocimiento del Demandante de la dirección correcta del Demandado.

Partimos de la premisa, sin resolverlo (por resultar innecesario), de que, sobre la base de lo declarado por el emplazador, el TPI actuó correctamente al autorizar el emplazamiento por edictos.

Ello no obstante, en la Moción, el Demandado alega que el emplazador mintió en su declaración, pues en realidad no lo llamó ni le escribió luego de una conversación inicial[3]. Más aún, el Demandado aseveró que el Demandante conocía su dirección residencial, lo cual es pertinente dado que, de su faz, el emplazador no intentó emplazarlo allí (sino en otra urbanización). Además, esto también habría causado que fuese defectuosa la notificación de la Sentencia al Demandado por el TPI, pues el Demandante habría omitido suplir una dirección correcta del Demandado, a pesar de conocerla.[4]

Así pues, **de probarse lo alegado en la Moción**, estaríamos ante una situación en la cual, por motivo de los actos del Demandante y su emplazador, no se habría respetado el debido

---

[3] Específicamente, el emplazador indicó que llamó por teléfono varias veces al Demandado y le dejó mensajes de texto en su teléfono. Por su parte, el Demandado niega haber recibido estas llamadas (excepto una). Ello plantea un asunto de credibilidad que debe ser evaluado en una vista evidenciaria.

[4] Recuérdese que del récord surge que la *Notificación de Sentencia por Edicto* enviada al Demandado por correo certificado fue devuelta por el servicio postal, indicándose que se había remitido a una dirección insuficiente.

proceso de ley de los Demandados. Por ello, era imperativo que, antes de adjudicar la Moción, el TPI recibiera prueba que le permitiese determinar si es o no cierto lo alegado en la Moción.

En efecto, según arriba expuesto, "[s]iempre [...] que se invoquen razones válidas que requieran la presentación de prueba para sustanciarlas, la celebración de una vista será mandatoria", sobre todo cuando lo alegado, si se prueba, justificaría el relevo solicitado por violación al debido proceso de ley. Véase, *Ortiz Serrano*, 106 DPR a la pág. 449.

Por tanto, la Moción no podía adjudicarse sin brindarle la oportunidad al Demandante de probar lo afirmado en la misma. No estamos ante una Moción que, de su faz, carezca de méritos. El TPI estaba obligado, en estas circunstancias, a celebrar una vista en la que se le permitiese a las partes presentar prueba en torno a las alegaciones pertinentes de la Moción. Solo así estará el TPI en posición de dirimir adecuadamente los méritos de la Moción.

V.

Por los fundamentos expuestos, se expide el auto solicitado y se revoca el dictamen recurrido. Se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí expuesto y resuelto; en particular, dicho foro deberá celebrar una vista evidenciaria, a los fines de dilucidar los méritos de la moción presentada por los demandados al amparo de la Regla 49.2, *supra.*

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones